UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| WARREN B. DOUSSAN, JR. INDIVIDUALLY and | * | CIVIL ACTION |
| d/b/a AMERICAN CONSULTING & DEVELOPMENT | * | |
| COMPANY, LLC | * | NO. |
| | * | |
| VERSUS | * | DIVISION " " |
| | * | |
| BP AMERICA PRODUCTION COMPANY | * | JUDGE |
| | * | |
| | * | MAG. |
| | * | |
| | * | JURY TRIAL DEMANDED |
| ************************************************ | | |

## COMPLAINT FOR BREACH OF CONTRACT

TO THE HONORABLE UNITED STATES DISTRICT COURT FOR THE EASTERN

DISTRICT OF LOUISIANA AND THE JUDGES THEREOF:

The Complaint of Warren B. Doussan, Jr., individually and doing business as American

Consulting & Development Company, LLC, (herein Plaintiffs),all residing and domiciled in

the State of Mississippi, with respect represent:

1.

Made defendant herein is BP America Production Company (hereinafter Defendant), a foreign

1

corporation with its principal place of business in a state other than Mississippi, which is authorized

to do and doing business in this state and judicial district.

2.

Jurisdiction of this cause of action against said Defendant is based upon the complete

diversity of citizenship between the parties and an amount in controversy which exceeds $75,000,

exclusive of costs and interest.

**FOR A FIRST CAUSE OF ACTION**

**BREACH OF CONTRACT**

3.

On May 5, 2010, plaintiffs entered into a Master Vessel Charter Agreement with defendant

wherein defendant chartered plaintiffs' vessels to assist in the oil spill clean-up activities resulting

from the April 20, 2010 explosion aboard the mobile offshore drilling unit *Deepwater Horizon.* The

charter agreement entered into by and between plaintiffs and defendant governing the use of said

vessels were designated as (1) Contract No. MOB 50167, dated May 5, 2010 (hereinafter Charter

Agreement).

4.

Pursuant to the charter agreement entered into by and between plaintiffs and defendant for use of

each of the vessels, plaintiffs were to maintain and employ each as "vessels of opportunity" for the

exclusive use of defendant. The charter agreements required that the vessels "shall be available and

2

at charterer's disposal for operation twenty-four hours per day."

5.

The charter agreement provided for fixed rates of hire payable to plaintiffs throughout the term of charter agreement. Pursuant to the terms of the charter agreement, defendant made timely payments relating to four (4) of the five (5) chartered vessels totaling $425,144.34. Defendant failed to make any payments relating to charter of the 14' Mediterranean 1 canoe in the amount of $218,173.04.

6.

Between May 5, 2010 and November 5, 2010, plaintiffs provided vessels and crew and made available on a standby basis vessels and crew as part of defendant's cleanup effort pursuant to the terms of the charter agreement.

7.

Beginning on or about July 11, 2010, and continuing through the present, and despite no action by defendant to alter, revoke, or cancel any of the individual charter agreements and plaintiffs' continuing legal obligation to make said vessels available for defendant's exclusive use twenty-four hours per day, defendant ceased making payments rightfully due to plaintiffs under the terms of the charter agreements without notice, explanation, or justification.

8.

Defendant has breached and continues to breach its contractual duty by not making timely payments due to plaintiffs or lawfully cancelling the charter agreement, despite timely submission of multiple

3

invoices from plaintiff to defendant and amicable written demand for payment of same. Defendant has failed to make payments in the amount of $820,523.06, which amount is presently due to plaintiffs in full pursuant to the charter agreement described herein, and for which amount plaintiffs make immediate demand in full, plus future amounts owing and accruing, including attorney's fees incurred in the enforcement of the charter agreement.

9.

## BREACH OF CONTRACT AND/OR IN THE ALTERNATIVE UNJUST ENRICHMENT CLAIM RELATING TO THE STAGING AREA

On May 5, 2010, plaintiffs entered into a Master Vessel Charter Agreement with defendant wherein defendant agreed to pay for all port fees and moorage that may be incurred as a direct result of the charter and further required that vessels be loaded and unloaded at any dock, berth, or place as directed by charterer and approved by vessel owner. The agreement further required vessel owner to assist in locating and selecting the docks and landings suitable to accomplish the safe loading and unloading of passengers and cargo.

10.

Plaintiffs were informed that their duties would include transporting US Fish and Wildlife Services teams to various locations in the Mississippi Sound, Gulf of Mexico and to various Barrier Islands to rescue oiled birds. Plaintiffs were informed that their six (6) and ½ acre peninsula bearing municipal address 3500 Gregory Dr., Pass Christian, Ms. was the perfect location from which to

4

deploy the fish and wildlife teams.

11.

Shortly thereafter plaintiffs' crews began to build docks, install water lines, install limestone driveways and parking pads, construct wildlife holding pen, construct the wall of fame board, install commercial ice-maker, construct dry docks, install canopies, purchase/furnish and move in an office/bad weather retreat building with high speed internet service and ship to shore VHF radio service, supplied port-o-let, and night time armed security guards.

12.

On a daily basis as many as thirty six (36) people accessed the staging area either by boat and/or automobiles, including seven to nine fish and wildlife teams including, but not limited to, US Fish and Wildlife Services, US Wildlife and Fisheries, Wildlife Services, Animal and Plant Health Inspection Service, MMS Mississippi State University, US Government Wildlife Museum, Parson's Construction, and Matrix New World Response Team, which utilized the staging area daily. The wildlife teams would deploy from the staging area to rescue oiled Pelicans, Northern Gannets and Sea Gulls.  The oiled birds would be returned to the staging area and transported to local rehabilitation centers.

13.

Beginning on or about May 31, 2010, and continuing through the present, and despite no action by defendant to alter, revoke, or cancel the charter agreement or any of the activities

conducted at the staging area, plaintiffs' continued to make said staging area available for defendant's exclusive use twenty-four hours per day. Defendant failed to make payments rightfully due to plaintiffs under the terms of the charter agreement without notice, explanation, or justification.

14.

Defendant has breached and continues to breach its contractual duty by not making timely payments due to plaintiffs or lawfully cancelling the charter agreement or any of the related staging area activities, despite timely submission of multiple invoices from plaintiff to defendant and amicable written demand for payment of same. Defendant has failed to make payments in the amount of $26,115.47 for material related to staging area build out, $51,230 for labor related to the build out, and $4,248,967.02 for use of the 6.46 acres of staging area property and docking facilities at a day rate of .0924 per square foot, totaling $4,326,312.49, which amount is presently due to plaintiffs in full for use of the staging area pursuant to the charter agreement described herein, and for which amount plaintiffs make immediate demand in full, plus future amounts owing and accruing, including attorney's fees incurred in the enforcement of the charter agreement.

15.

Plaintiffs seek all damages and amounts reasonable in the premises, including all consequential damages resulting directly or indirectly from defendant's failure to pay.

16.

Plaintiff hereby requests a trial by jury on all issues raised herein.

6

**WHEREFORE**, Plaintiffs, Warren B. Doussan, Jr., individually and doing business as American Consulting & Development Company, LLC, prays for judgment against defendant BP America Production Company and in their favor for payments due under the terms of the charter agreement in the amount of FIVE MILLION ONE HUNDRED FORTY SIX THOUSAND AND EIGHT HUNDRED THIRTY FIVE and 55/100 ($5,146,835.55) DOLLARS, or such greater amounts as may be appropriate under the circumstances, for attorney's fees incurred by the plaintiffs in this cause, for all taxable costs and interest, for any additional relief to which plaintiff may be entitled, and for a trial by jury on all issues raised herein or by way of supplemental or amended complaint.

Respectfully submitted,

/s/ Robert J. Diliberto
Robert J. Diliberto (LA 24783)
Damon A. Kirin (LA 24729)
Megan E. Snider (LA 33382)
DILIBERTO & KIRIN, L.L.C.
3636 S. I-10 Service Rd. West, Suite 210
Metairie, LA 70001
Telephone:    (504) 828-1600
Fax:          (504) 828-1555